May it please the Court, Cheryl Gordon-McLeod on behalf of Jerry Harris. We spent a lot of time in the brief discussing exactly which test applies, Crawford, Roberts, or Bruton. I think under all the tests, the question is going to be basically the same. As Bruton said, quote, Is there a substantial risk that the jury, despite instructions to the contrary, look to the incriminating extrajudicial statements in determining petitioner's guilt? Basically, did the statement hurt the defendant? And I think I have to convince you that it did, no matter which test applies. What I'd like to do is start with the Sawyer co-defendant extrajudicial. So are you just walking away from, I didn't understand what the issues were about Crawford and Roberts. And if you're telling me that you think they don't matter, I would tend to agree with you. Actually, I was trying to tell you that I think I win under all of them. Okay. I think all of them essentially are going to ask, did the Sawyer statement hurt Mr. Harris? Under Bruton, they ask, did it incriminate Mr. Harris in such a way that the instruction could cure it? Under Crawford, it asks, if it's testimonial, was it used against Mr. Harris? And then there's going to be a harmless error inquiry that this Court is going to do. And under Ohio v. Roberts, it certainly hurt Mr. Harris. And this was not, the Sawyer statements were not within a firmly rooted hearsay exception. But, again, this Court, I'm sure, is going to do a harmless error analysis of the statements. And so I think under any of the tests, I need to convince you that the statements hurt. So that's what I will do. The Sawyer extrajudicial statement began that Sawyer said, I did not conceive of the plan to rob, I just went along with it, thus indicating that somebody else conceived of the plan to rob. The plan that he did. Isn't the exact question under Bruton? I'm sorry. First of all, just to give you some clue about where I think this case is, Roberts and Crawford seem to have nothing to do with it because, at least in form, this was not admitted against him. So it's a Bruton. It was not admitted against Mr. Harris. So we're dealing with Bruton and its progeny. And its progeny are basically Richardson and Gray in the Supreme Court because we're dealing with AEDPA. So the question is, why wasn't what the State Supreme Court did with regard to the redaction question, assuming that's even before us, which I'm not sure it is. I'm sorry, assuming that which is either? The redaction issue. You haven't really, in your briefs, framed the redaction issue. But assuming that that's what we're talking about, why is this an unreasonable application of Gray and Richardson taken together? To talk about it as a harmless just problem doesn't seem to me to be helpful. Let me talk about Gray and Richardson then. Bruton, of course, was where the co-defendant statement came in, and co-defendant Edward Evans explicitly named Bruton as the guy that committed the armed robbery with him. Richardson, in 1987, following Bruton, was the one where somebody else, Williams, confesses to the murder, and he says he did it with his third party, not Richardson, who was in the front of the car with him, that they were driving on the way to the victim's house, and that they did the murder, and there was no mention of anybody else even being involved in it. The redaction in Richardson completely eliminated the fact that somebody was sitting in the backseat of the car. In Gray, we had the fill-in-the-blanks problem. Gray was a joint trial. The co-defendant confession replaced Gray, the co-defendant, with the words blanks and deleted, and the Supreme Court, of course, reversed, saying that the natural inference the jury would draw from the blank and deleted is that it was Mr. Gray. So let's look at the Sawyer statement in this case. This was a statement that was basically a crafted script to eliminate supposedly references to the other co-defendants, but what Detective Watson ended up testifying on the stand was that Sawyer told him that Sawyer himself did not conceive of the plan to commit the robbery. Now, you say that I haven't framed the redaction issue, so let me go directly to the critical statement. Watson says that Sawyer said that, I was in the bushes, Mr. Vivas, the victim, came around the corner, and he was, quote, about to grab, close quote, Mr. Vivas, when, quote, Mr. Vivas was shot in the face, close quote. So what's the redaction issue? Vivas was shot in the face using the passive voice. It's really the flip side of the deletion issue where you're using the active voice. So the only difference between this statement, Vivas was shot, I mean, there's still a dead guy, was shot, and I didn't do it means that somebody else did it. There's really only two choices, and the reason that we know there's only two choices is because the independent evidence showed that Sawyer was there with Vivas, the dead guy. But there's all this discussion, and the opinions are very odd, but there's all this discussion in Richardson and in Gray of the independent evidence not mattering, that it isn't a question of independent evidence, it's whether the redacted version, I mean, the notion that we're going around redacting the truth is very troublesome to me, but that's what we're doing. So redacting these redacted versions have to somehow be in your face and facially incriminating. And yet, look at Gray. There was a blank, and there was a deleted. If they were looking really only at the statement and not at what the evidence showed about who was actually there, Gray would have lost, but instead he won because the court found that when you substitute blanks and deleted, it allows the jury to draw the inference. And I disagree with you that the cases say that you can't look at anything else because if you look at Gray, which was the 1998 case, the most recent of that trio of cases, at page 195 and 196, they talk about the inferences that the jury can draw. And they say, quote, inference pure and simple cannot make the critical difference. It's, quote, the kind of, not the simple fact of inference, quotes, quotes, that matters. And in Gray itself they said, quote, the inferences here involve statements that, despite the redaction, obviously refer to someone, often obviously the defendant, close quotes. What do you do with Justice Scalia's statement in Richardson for the majority? Quote, a witness whose testimony is introduced at a joint trial is not considered to be a witness against the defendant if the jury is instructed to consider that testimony only against the co-defendant. This accords with the almost invariable assumption of the law, that jurors follow their instructions. Well, to me that goes a long way to limit brutal. But Gray followed Richardson by about nine years. But we're looking at what the Supreme Court is today, I think. Correct. And I think Gray, 1998, is its most recent statement. I'm looking at the members of the Supreme Court. Who do you think they'd follow today? Well, I think we're bound by Gray and Richardson. I think I could make some prophecies. The real problem, I mean, you have to add on to all these problems, Ed, but that's really what you haven't addressed. Okay. Let me call your attention to Vasquez v. Wilson. It's the Third Circuit case decided in 2008. It was an AEDPA case. It was a habeas case like this. And the facts are really parallel to this case. There's three guys that were stopped in a car, just like there's three guys stopped in our car. They were stopped for a traffic infraction, not for the murder that had happened. Somehow they were connected up with the murder in that case as well as in our case. And they got a defendant out of one of the guys there, Santiago. And the defendant pointed the finger at Vasquez and said, just like Sawyer said in our case, and I was so surprised when Vasquez opened fire. I didn't know that was going to happen. What the trial court did in Vasquez v. Wilson was they took out the name Vasquez and they substituted my boy. It said, you know, and my boy opened fire. Well, the Third Circuit in 2008 applying AEDPA and looking at Richardson and Gray granted the writ. The Third Circuit said that it's not just the fact that the jurors had to draw an inference, it's the fact of how easy is it to go from the inference to pointing the finger at Vasquez. And they said here it was really easy because there were only three people. One was eliminated. It was between the declarant and Vasquez, so the jury only had to choose between the two of them. Just like the jury only had to choose between Harris and Sawyer in our case as to who was the trigger man. It was a third defendant, right? I'm sorry? It was a third defendant. Yeah, there was a third defendant in our case, just as there was a third defendant in that case. The third defendant in our case was accused of, he was a sidekick, he was accused of criminal rendering, and I think he was, which is a lesser crime, and he was convicted of criminal rendering. It's Johnston. But Johnston was not pictured at the scene in our case. The testimony from the closest thing the state had to eyewitnesses, Berg and Mahalcia. Mahalcia was the bouncer. Mahalcia says Harris walked around that corner first, and then Vivas, the victim, walked after him. And Berg, the musician at the bar, says after the fact, well, I heard the pop, I thought it was fireworks, and then I walked around and I saw two guys lowering the body to the ground. Who's holding a gun in his left hand? Well, this is several minutes, if you go from the testimony after the shooting, and he said it was a lefty, and drawing the information. Do you think they traded guns around? Well, the question is, I agree with you that that's incriminating towards Mr. Harris, because Harris was the lefty. I went through the transcript, and that's the only incriminating statement showing Harris. It's pretty incriminating. Well, but it's not conclusive, because he wasn't. Well, you've got a very difficult standard with the debtor. You can't say the state court made an error. It's not an unreasonable error. Why was the state court unreasonable in saying there's enough there? Well, the same reason that they did in Vasquez, because giving the jury the decision to choose only between two people, not between the defendant on trial and the world, violates Richardson when the redaction does that. But you add into it the fact there is testimony that puts Harris there with a gun in his hand. And you've identified the only bit of testimony that does it. I want to point out to you that that's Berg's testimony. He was not an eyewitness. He came around and saw that several minutes after he heard the pop. So he's not necessarily looking at the trigger man. I don't know what the number of minutes are. Is that in the record? No, the number of minutes is not. I thought it might be a minute or half a minute. Well, it might have been. But he said he heard the pop. He thought it was fireworks. He didn't think much about it. He got done. And then he walked around to his car. So he wasn't there. But that fact, in any event, would not go to whether there was a Confrontation Clause problem. It would go to harmlessness. Correct. Here's what goes to a Confrontation Clause problem, and here's what I think distinguishes us and makes this case worse than Richardson and as bad as Vasquez. In Vasquez, the prosecutor there accidentally, in closing argument, misspoke and said, oh, Santiago was pointing the finger at Vasquez. Oops. And then she went on. And the Third Circuit said, well, it was unintentional, but she connected up the deleted in the statement, and that was prejudicial. Well, let's look at the rebuttal closing argument in this case. E.R. 460, Excerpts of Record 460. What did the State courts say about the closing argument? What did the State courts say about the closing argument? Yes. That's what I'm asking. I don't think the State court decisions mention the prosecutor's comment in closing argument at all, where the prosecutor linked this up. And the prosecutor specifically did link it up. Well, I am not sure of that. I mean, I understand you can read it that way, but you can also read it as saying that he's really, in this paragraph, trying to prove that Sawyer was, in fact, there. And his statement, it's very clear who the shooter was, is kind of an aside. I mean, it's not very clear because of the statement. It's very clear because the evidence in general demonstrates that. But you could see the risk that it poses. And I think I read it. It's one paragraph, and I didn't delete anything. And it goes from here's the statement, and it's very clear who the shooter was. That's the defendant, Harris. I think it's fair to say that the respondent. But he said we have the statement of the defendant, Sawyer, and it relates just to him. We can see his actions. I ask you to look at this. It's very clear who the shooter was. That's the defendant, Harris. And it's very clear the other person involved was the defendant, Sawyer, because of what the statement says. And the critical issue in terms of the aggravated murder is who the shooter was and who committed the aggravating factors. I want to point out that in the appellant's brief at page 23, footnote 2, I think they're reading it the same way I'm reading it. Because they ask for permission to argue something different in this court than was argued in the State court, tacitly acknowledging that in State court, the State argued that Sawyer's statement incriminated Harris. If the State seems to see it that way, as I think footnote 2 of their brief shows that they did, it's certainly possible that the jury did also. We are out of time, and we will give you some time to rebuttal. Thank you, Your Honor. Thank you. And please, the Court. My name is Greg Rosen, and I represent the respondent in this matter. This Court should affirm the decision of the District Court, because Harris fails to show that the State court decisions in his case, as to his Confrontation Clause claims, were objectively unreasonable applications of Supreme Court precedent. Richardson is the closest case to the facts of this case. Richardson made clear. Well, Richardson, but in Richardson, there was no reference to a third person at all. That's correct, Your Honor. And in this particular case, Sawyer's confession omitted Harris's name entirely, and omitted Harris's reference. It did not omit the fact that there was a third person who was the shooter. I'm sorry, Your Honor? It did not omit the fact that there was a third person who was the shooter. That is correct. And at the point that this confession was introduced, it was pretty clear who was, it was quite clear who was in play and who was being accused of being the shooter, right? No, Your Honor. I would respectfully disagree with that. The trial court fashioned a script, as counsel correctly pointed out, which complied with the requirements of Richardson by omitting the name Mr. Harris. And as Judge Noonan has pointed out, and as the record reflects at SCR 557, the jury was expressly instructed that it could not consider Sawyer's statement against Harris. But what I was asking you was, at the point in the trial that the confession was, the redacted, mutilated version of the confession was introduced, it was not the beginning of the trial. There was evidence in already. But that's true. And the opening statements had occurred, and it was clear who the prosecution was claiming was the shooter. Yes, I would agree with that. Okay. That's all I was trying to establish. I would agree with that, Your Honor. Okay. And so when this was, and it was clear from the statement that Sawyer was saying, I wasn't the shooter, and there was a shooter, and I wasn't him. That's true. But again, the redacted version. And the shooter was really, had done something terrible, in fact. I mean, there was a lot of stuff in there that's really not inculpatory at all of Sawyer. It's inculpatory, which is part of the problem here. It's exculpatory of Sawyer and inculpatory of the shooter. Which is why the court followed Richardson's directive and imposed a limiting instruction. And Richardson talked about the nature of the problem. Well, it's a little different. It's more like the Lilly problem. Because the classic Bruton problem is the person comes, there's often some exculpatory, you know, side language. But the main problem is that he comes in and says, you know, the two of us did it. So he's now confessing both as to him and as to somebody else. But here, a lot of what was in this statement was really quite superfluous with regard to inculpating Sawyer and was exculpating Sawyer. Yes, but the difference between this case and Lilly is that in Lilly, the confession expressly implicated the accused. This particular confession from Sawyer, mutilated or redacted, did not. And that is the enormous difference between this case and Lilly and Gray. In Richardson, the Supreme Court found that the confession did not facially incriminate. And the Supreme Court had a discussion in Richardson about the nature of potential inferential incrimination. And the Supreme Court noted that when the confession is not facially incriminated, a limiting instruction will persuade the jury not to consider any inferences whatsoever. But in Gray, they said that if you leave blanks, it doesn't count. And the question is, you know, so this one is clearly somewhere in between, i.e., there's no blanks, but there is definitely a third person and a clear. I mean, if anybody thinks about it, it's certainly pointing to him. The question is, how hard does somebody have to think? I agree. But in Gray, the inferences that could be drawn, and the question that was asked as I recall from Gray was, who was in the group that beat Stacy? And the answer, the testimony was, me, deleted blank, deleted blank, and I think a bunch of other guys. As the Supreme Court pointed out in Gray, however, the inferences there directly referred to another person. The inferences in Sawyer's case do not, and that's why this case is closer to Richardson than it is to Gray. Well, they don't, they do in any, if anybody knows any grammar, right? Because to say that somebody was shot necessarily means somebody shot him. Yes. So it's just that difference between leaving a blank and putting it into passive voice. And the question is, should anything constitutional turn on that? My response would be that it does, because as counsel correctly pointed out in the Gray discussion, it is the kind of inference, not the simple fact of inference. And in Gray, the inference directly referred to someone. The inference here is indirect. It does not directly refer to someone. And even if this Court finds that the state court decisions in this case, resolving the Confrontation Clause claims were incorrect or erroneous, that is insufficient for federal habeas relief. The Supreme Court has made absolutely clear in Lockyer v. Andrade that's not enough for habeas relief. Mr. Rosen. Yes, Your Honor. I might have missed your argument, but what do we do about the prosecutor's closing argument when he says it's very clear that who the shooter was, that's the defendant. Harris, it's very clear that the other person involved is the defendant. Sawyer, he's making those comments to the jury. That's true, Your Honor. Is the Court reading from ER 467? Yes. If you look at the paragraph which precedes that paragraph, I think the prosecutor's comments when read in complete context explain what he was referring to. He goes back and forth between Harris's actions and Sawyer's statement. And I think it's also to remember, Judge Thompson, that that is not the only reference that the prosecutor makes to Sawyer's statement. At ER 320, the prosecutor states, quote, there's an instruction that indicates these statements can only be used against the defendant Sawyer. That's one of his honors instructions. And the prosecutor reiterates that at ER 330 when he says, we've got the statement from Mr. Sawyer which speaks only to his activity. Right. So the prosecutor's reiterating the fact that the statement from Sawyer can only be used against Sawyer and not against Harris. And I think if you read those two paragraphs, not just the one at ER 467, the prosecutor's referring to Harris's actions in conjunction with other things. But in fact, to any sensible juror, it was very clear who the shooter was in the redacted confession. But Richardson talks about that as well, Your Honor. He talks about the fact that if the statement later becomes incriminating through linkage with other evidence. But that's why I began by saying it wasn't questioned later here. It was at the time it was introduced. Well, I think that's up to the jury. There was linkage to other evidence which made the statement, I think, ultimately incriminating as to Harris. But Richardson said that was okay. If the statement ultimately became incriminating through the linkage of other evidence. And we've talked a little bit about Mr. Berg's testimony that when he came around the corner, he observed an individual, had a gun pointed at him, and the individual was holding the gun with his left hand and told to go away. Is there any indication how quickly he came around the corner? I don't think there's any precise indication in the record as to specific time, as to seconds or minutes. That's not my recollection of the testimony. Mr. Berg testified, as I recall, that he heard a gunshot. He went around the corner. He saw Mr. Vivas, as counsel correctly pointed out, being lowered to the ground, and an individual pointed a gun at him using his left hand when doing so. But I don't recall any specific time in the record as to how quickly Mr. Berg got to the scene after hearing the gunshot. Our position is that Mr. Harris fails to meet his burden under the AEDPA. He fails to show that the state court decisions which resolved his Confrontation Clause claims were objectively unreasonable. Again, even if this Court finds itself reaching a different conclusion than the conclusions reached by the Washington State Courts, that is insufficient for federal habeas belief to be grounded. What about the Third Circuit case, which was post-AEDPA and does take, apply the unreasonableness standard and is pretty close on the facts? I'm sorry. The Third Circuit opinion that was referred to. Well, I'll initially state it. And you're allowed to say, I think it was wrong, but aside from that. Well, I'll say more than that. I'll say initially and state the obvious. The Third Circuit is not the Washington United States Supreme Court and thus does not constitute clearly established federal law. That's not the question. They were facing the same issue we are. Or a very close one. And I want to know why we shouldn't do the same thing. Because my boy, and I'm using counsel's characterization, my boy is almost the same as gray in terms of me, deleted blank, deleted blank, because it directly, the inference there, my boy, directly refers to someone specifically, a person. It refers to someone. Is constitutional law really to turn on grammar? I mean, it's very hard for me to believe that we've gotten ourselves into such a cynical position that if you're clever enough in covering up your steps, even though anybody who can read English will come to the same conclusion from the two versions, then it makes a difference. I think Justice Breyer had a comment about that at the very beginning of gray. And he talked about the fact, does this make a constitutional difference the way this was written? And he said it did not. And he fell for the petition there. Words matter. The words matter here. But I think when you step back and you step back from what was said in the statement, you have to step back and apply the Supreme Court precedent. And when you do that, you evaluate Sawyer's statement, even though we may not like the fact that it didn't provide the entire truth to the jury. When you apply his statement to Supreme Court precedent, specifically Richardson or Gray, this Court should reach the conclusion that under the AEDPA, Mr. Harris doesn't meet his burden to show that the State Court decisions were objectively unreasonable. I would ask that this Court please affirm the decision of the District Court. Thank you very much. Thank you. Your Honor, I have very little to add. Let me answer Judge Noonan's question. I'm looking at the record, the transcript, page 1165, which I don't think is in any of the excerpts of record. And that's Robbie Berg's testimony. He says, we were looking at a car. We heard a loud bang. I don't think a lot about it. I didn't think a lot about it. It sounded a lot like an M-80. A loud firecracker or cherry bomb. I had seen children playing, so I wasn't that concerned. After that, shortly after that, I was walking to my car. I was parked in front of the physical therapy business, blah, blah, blah. I walked around the corner. And then he describes what he saw. That's what I characterized as a couple of minutes, not instantaneous. Okay. Thank you very much. Thank you both for a good argument in a difficult case. Harris v. Frakes is submitted, and we'll take a 10-minute recess. Thank you.
judges: Noonan, Thompson, Berzon